**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA,

                                  Plaintiff,                    1:25-cr-00296 (AMN)

v.

BRYAN OTERO,

                                  Defendant.

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **United States Attorney for the** | **MIKAYLA ESPINOSA, ESQ.** |
| **Northern District of New York** | Assistant United States Attorney |
| 445 Broadway – Room 218 | |
| Albany, New York 12207 | |
| | |
| 100 South Clinton Street | **JEFFREY BROWN, ESQ.** |
| Syracuse, New York 13261 | Assistant United States Attorney |
| *Attorneys for Plaintiff* | |
| | |
| **ALBERT Y. DAYAN, ESQ.** | **ALBERT Y. DAYAN, ESQ.** |
| 80-02 Kew Gardens Road – Suite 902 | |
| Kew Gardens, New York 11415 | |
| *Attorneys for Defendant* | |

**Hon. Anne M. Nardacci, United States District Judge:**

## MEMORANDUM-DECISION & ORDER

### I.      INTRODUCTION

Presently before the Court is the Government's motion to declare Defendant Bryan Otero to be in material breach of his plea agreement ("Plea Agreement" or the "Agreement") with the Government.  Dkt. No. 68 (the "Motion").  Defendant filed an opposition to the Government's Motion, *see* Dkt. No. 84, the Government filed a reply in support of its Motion, *see* Dkt. No. 85,

and with leave of Court, Defendant filed a sur-reply in further opposition to the Government's Motion. Dkt. No. 95.

For the reasons set forth below, the Government's Motion is granted.

## II.      BACKGROUND

On July 22, 2025, a federal grand jury indicted Defendant along with two alleged co-conspirators. *See* Dkt. No. 1. The indictment charges Defendant with one count of conspiracy to commit healthcare fraud, in violation of 18 U.S.C. §§ 1347 and 1349, two counts of healthcare fraud, in violation of 18 U.S.C. § 1347, and two counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1). *See id.*

### A.  The Plea Agreement

On September 26, 2025, Defendant entered into a Plea Agreement with the Government. *See* Dkt. No. 43. Pursuant to the Plea Agreement, Defendant agreed to plead guilty to one count of conspiracy to commit healthcare fraud, in violation of 18 U.S.C. §§ 1347 and 1349, and one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A. *See id.* at ¶ 1(a). In turn, the Government agreed that it would move to dismiss the remaining charges—two counts of healthcare fraud and one count of aggravated identity theft—and agreed not to bring additional federal criminal charges against Defendant based on the conduct described in the indictment or the factual basis section of the Plea Agreement. *See id.* at ¶¶ 2(a)-(b).

Additionally, according to the Plea Agreement, Defendant must pay restitution to the victims of his offenses in the amount of (i) $3,913,442.58 to the New York State Medicaid program; (ii) $75,720.69 to CVS Pharmacy Inc.; and (iii) $ 74,442.57 to Walgreens Co., *see id.* at ¶ 1(d)(1)-(3), and must also forfeit a money judgment in the amount of $260,717.21. *Id.* at ¶ 1(e). The Plea Agreement further provides that Defendant must identify all assets in which he

has any legal or equitable interest, identify all assets valued at more than $5,000 that have been transferred to third parties since the date of the first offense giving rise to the Plea Agreement, and not transfer any assets valued at more than $5,000 without the approval of the Asset Recovery Unit of the United States Attorney's Office until the fine, forfeiture, and restitution are paid in full or are otherwise terminated. *Id.* at ¶¶ 1(f)(1), (I)(4).

Furthermore, Defendant agreed to preserve and liquidate assets as outlined in the Asset Preservation and Liquidation Agreement ("APLA"), which is attached to and fully incorporated into the Plea Agreement. *Id.* at ¶ 1(d)(6); *see also* Dkt. No. 43-1. The APLA establishes the terms under which Defendant must sell or otherwise dispose of his available assets for purposes of satisfying his restitution obligations. *See* Dkt. No. 43-1. Specifically, under the APLA, Defendant agreed to provide a complete and accurate list of all residential and commercial properties that he owns individually, or that are owned by any business in which he has an interest, within seven days of the execution of the Plea Agreement. *Id.* at ¶ 5. Defendant further agreed to provide complete and accurate financial disclosure affidavits, for himself individually and for each of his businesses, within thirty days of the execution of the Plea Agreement. *Id.* at ¶ 6. However, if requested, Defendant must complete such affidavits and provide supporting documentation "no later than 10 days after receiving such a request," and Defendant's failure to do so timely and accurately "may, in addition to any other penalty or remedy authorized by law, constitute the [D]efendant's failure to accept responsibility under [Section] 3E1.1" of the U.S. Sentencing Guidelines ("USSG"). Dkt. No. 43 at ¶ I(1). Pursuant to the APLA, Defendant also agreed to preserve his assets by agreeing to not "sell, transfer, borrow against, make withdrawals or transfers from, commit waste against, or otherwise impair the value of any real property, personal property that might reasonably have a value of $1,000.00 or more, bank accounts, investment

accounts, stocks, or bonds," in which he has an interest. Dkt. No. 43-1 at ¶ 10. Defendant also agreed to surrender 100% of the net proceeds of the sale of certain property, including all funds from the JP Morgan Chase accounts of Fortune 4 Diabetics (a company owned solely by Defendant), a 2024 Cybertruck, a 2017 Mercedes-Benz S550, and certain property located in Wood-Ridge, New Jersey ("Wood-Ridge Property"). *Id.* at ¶¶ 13, 16-17.

Furthermore, if Defendant breaches any term or condition of the Agreement or supplemental agreements with the Government, the Government, has, *among other things*, the right to void the Plea Agreement, in whole or in part. *See* Dkt. No. 43 at ¶ J (emphasis added).

## B. Change of Plea Hearing

On October 10, 2025, after execution of the Plea Agreement, Defendant and his counsel, along with the Government, attended a change of plea hearing ("Change of Plea Hearing" or "Hearing"). *See* Dkt. No. 76. Defendant was placed under oath, confirmed that he was not under the influence of any narcotics, alcohol, drugs, or medication, and affirmed that his ability to understand the proceedings was not impaired in any way. *Id.* at 3:05-18, 5:22-25, 6:01-09. Defendant also affirmed that he understood the penalties for making a false statement. *See id.* at 3:19-25.

Defendant subsequently affirmed that he had adequate time and opportunity to discuss the indictment and all aspects of his case with his attorney. *Id.* at 6:23-25, 7:01. Defendant also affirmed that he understood all of his rights and still wished to plead guilty. *Id.* at 9:21-25. Defendant then pled guilty to counts one and six of the indictment, and admitted to the forfeiture allegation. *Id.* at 10:03-25, 11:01-21. Further, Defendant affirmed that he had the opportunity to carefully review the Plea Agreement with his attorney, and that he understood the terms that he was agreeing to in the Plea Agreement. *Id.* at 20:04-10.

Then, the Government specifically articulated the sentencing possibilities.  In particular, the Government affirmed the following on the record:

> The [D]efendant has agreed to forfeit . . . $260,717.21.  There is a mandatory special assessment of $100 per count, for a total of $200.  And there is also restitution of $3,913,442.58 to the state Medicaid program, $75,720.69 to CVS, and $74,442.57 to Walgreen's.  This [P]lea [A]greement does contain a[n] attachment that is a[n] asset forfeiture and liquidation agreement, and . . . on page 4 of that agreement, the defendant has agreed to forfeit . . . the JP Morgan Chase accounts for Fortune 4 Diabetics, which is a company that is wholly owned by the defendant for the accounts ending in 7501, 7210, 2233, and 7210.  He has also agreed to turn over for the purposes of satisfying . . . the restitution the 2024 [C]yber truck . . . that is identified in that agreement, as well as the 2017 Mercedes-Benz S550 that's identified in that agreement.  He's also agreed to list his property . . . in Wood-Ridge, New Jersey, with the proceeds of that being applied towards restitution.

*Id.* at 21:07-25, 22:01-03.  Defendant subsequently affirmed that he understood the sentencing possibilities recited by the Government.  *Id.* at 22:05-09.

Furthermore, Defendant affirmed that he understood that he did not have a right to withdraw his guilty plea after it is entered by the Court.  *Id.* at 24:20-23.  Defendant's counsel also confirmed that he advised Defendant of his rights, the nature of the charges against him, and the consequences of pleading guilty.  *See id.* at 27:12-18.  The Court then accepted the Defendant's guilty plea, finding, *inter alia*, that Defendant pled guilty knowingly and voluntarily, and that Defendant understood the consequences of pleading guilty.  *See id.* at 28:19-25, 29:01-04.

### C.  The Parties' Actions Following the Change of Plea Hearing

On October 15, 2025, the Government emailed Defendant's counsel requesting that Defendant provide complete and accurate financial disclosure affidavits by 5:00 pm on October 31, 2025, noting that paragraph I(1) of the Plea Agreement requires that Defendant provide complete and accurate financial disclosure affidavits and supporting documentation within ten days of a request by the Government.  *See* Dkt. No. 68-2 at 2.  In response, Defendant's counsel

stated that he would not be able to complete the financial disclosure affidavits within ten days and instead needed two weeks. *See id.* The Government confirmed that two weeks was acceptable, so long as the documentation was received by October 31. *See* Dkt. No. 68-3 at 2. On November 3, 2025, after the deadline had elapsed and the Government had not received the required documentation, the Government emailed Defendant's counsel asking when they should expect to receive the completed affidavits. *See id.* Defendant's counsel replied stating that he was out of the country and that he was "[n]ot sure what paperwork" the Government was referring to. *Id.* The Government noted that the paperwork was outlined in the Government's previous email sent on October 15, and reminded Defendant's counsel that failure to timely and accurately complete the affidavits may "constitute the [D]efendant's failure to accept responsibility under USSG § 3E1.1." Dkt. No. 68-4 at 2-3. On November 5, 2025, the Government again provided the paperwork to Defendant's counsel and stated that the Government expected Defendant to provide all documentation as soon as possible. *Id.* at 2. On November 10, 2025, the Government again emailed Defendant's counsel requesting that the completed documentation be provided that week, warning that failure to comply with the terms of the Plea Agreement may warrant a loss of acceptance of responsibility credit, which could add nearly a year of imprisonment to Defendant's Sentencing Guidelines range. *See id.*

Approximately two months later, on January 13, 2026, after still receiving nothing, the Government emailed Defendant's counsel once more, stating that the Government "will proceed with a request that [Defendant] not be awarded acceptance of responsibility credit if [it] do[es] not hear back from [him] by this Friday, January 16." Dkt. No. 68-5 at 2. Defendant's counsel replied stating, "I thought I reached out to you earlier this week. Please let me know what's expected from my client please." *Id.* After the Government reiterated to Defendant's counsel that

his client was required to provide completed financial disclosure affidavits and supporting documentation in October, Defendant's counsel apologized for the delay and stated that he "[w]ill work on it early next week." *See* Dkt. No. 68-6 at 2-3.  The Government responded that the Plea Agreement outlined an agreed-upon ten-day turnaround time for the documentation, and given that these documents were requested in October, the Government expected that they would be completed "as immediately as possible." *Id.* at 2.  The following day, Defendant's counsel again requested another copy of the financial disclosure affidavits.  *See id.*  After the Government yet again provided the paperwork, Defendant's counsel stated that the Government "should have everything back . . . on Tuesday[,] [January 20, 2026]." *Id.*  On January 20, 2026, Defendant's attorney delayed again, stating that the documentation would be complete by Thursday morning, January 22, 2026.  Dkt. No. 68-7 at 2.  On January 22, 2026, after once again receiving nothing, the Government emailed Defendant's counsel asking for an update.  *See id.*  Defendant's counsel stated that he and Defendant were still working on the documentation, but that it should hopefully be completed "within a day." *Id.*  Unsurprisingly, the Government did not receive any documents from Defendant that day, or the following day, and so on January 26, 2026, the Government emailed Defendant's counsel, requesting another update.  *See* Dkt. No. 68-8 at 2.  In response, Defendant's counsel asked for a phone call.  *Id.*  On January 28, 2026, Defendant's counsel and the Government spoke by phone, during which the Government discussed the contents of the Plea Agreement and its attached APLA.  *See* Dkt. No. 68 at 14.  Defendant's counsel asked for copies of the agreements, and represented that the Government would receive the completed documentation that week, as Defendant was completing the documentation with his accountant. *Id.* at 15.

Then, on January 30, 2026, Defendant's counsel emailed the Government and for the first time stated that his client "believes that it is unfair that he should liquidate his other assets beyond his minimal gains and temporary/minimal participation in the scheme for which he pleaded guilty to," and "wants to go back to the judge on this subject." Dkt. No. 68-10 at 2. In response, on February 2, 2026, the Government stated the following:

> [Defendant] signed a plea agreement and a liquidation agreement that are both in direct contravention to his new position that he believes he should not liquidate his assets to pay the victims of his crime. He specifically agreed to liquidate a variety of items, in addition to agreeing that he would pay restitution in the amount of $4,063,605.84. He also stated that he understood the terms of the plea agreement when he pled guilty to his crimes. He also agreed to complete the financial disclosures. We expect to hear from you by the end of the day today regarding his cooperation—otherwise, we will indeed have to go back to the Judge about his breach of the terms of the plea agreement.

*Id.* In response, Defendant's counsel declared that the parties "have to go back to the judge" and added:

> [Defendant] is not withdrawing his plea. But he will contest the other financial terms of the [A]greement. His position is simple. He feels like he is being robbed of everything he owns and the (sic) he worked legitimately hard for, for causing a 200k loss in this case. If you want to withdraw from the plea agreement? He is ok with that too.

*Id.* The Government indicated in response that there was no justifiable basis for Defendant to withdraw from the Plea Agreement, and insisted on his specific performance of the Agreement. *See* Dkt. No. 68 at 15. Then, on February 6, 2026, Defendant finally provided the requested financial disclosure affidavits to the Government, but the Government claims that the affidavits are incomplete and reveal the dissipation of over two million dollars in assets. *See id.*; *see also* Dkt. No. 68-11 at 2. Defendant's counsel also maintained that Defendant "disagrees that immediate pre-sentencing liquidation of his primary residence and personal vehicles is necessary at this time," and that a payment-based structure or court supervision was more appropriate. Dkt.

No. 68-11 at 2. Defendant's counsel suggested that the parties renegotiate the arrangement, and if that is not possible, ask "the Court [to] address the issue so that enforcement terms can be clearly set." *Id.*

Moreover, apart from the financial disclosure affidavits, under the Plea Agreement, Defendant is also required to provide the Government with a complete and accurate list of all residential and commercial properties owned by him individually, and by any business in which he had an interest, by October 3, 2025. *See* Dkt. No. 43-1 at ¶ 5. To date, Defendant has provided no such list. Dkt. No. 68 at 13. Additionally, Defendant is required to market his Wood-Ridge Property with a reputable real estate agent approved in writing by the Government by October 26, 2025. *See* Dkt. No. 43-1 at ¶ 17. To date, Defendant has not done so. Dkt. No. 68 at 13. Defendant is also required to surrender his 2024 Cybertruck, his 2017 Mercedes-Benz S550, and the balances (as of July 30, 2025) contained in four JP Morgan Chase accounts. *See* Dkt. No. 43-1 at ¶ 16. Again, Defendant has not surrendered any of these items to date. Dkt. No. 68 at 13.

On February 24, 2026, the Government filed the instant Motion seeking to have the Court (i) declare Defendant to be in material breach of the Plea Agreement and (ii) order that Defendant specifically perform his obligations under the Plea Agreement. *See generally id*. On March 30, 2026, Defendant opposed the Motion, contending that (i) Defendant did not understand what he was agreeing to when he signed the Plea Agreement, (ii) that the Government is not entitled to specific performance of the Plea Agreement, and, in any event, (iii) Defendant did not breach the Plea Agreement because he complied with its constitutionally permissible provisions. *See generally* Dkt. No. 84. On April 7, 2026, the Government filed a reply in support of the Motion, *see* Dkt. No. 85, and with this Court's permission, Defendant filed a sur-reply in further opposition to the Motion on April 20, 2026. Dkt. No. 95.

### III.     STANDARD OF REVIEW

"As a threshold matter, both defendants and the government are bound to the terms of plea agreements, and neither party to a plea agreement may 'unilaterally rewrite the agreement to protect its interests.'" *United States v. Rubenstein*, 228 F. Supp. 3d 223, 231 (E.D.N.Y. 2017) (quoting *United States v. Alexander*, 869 F.2d 91, 93 (2d Cir. 1989)).  In determining whether a defendant has breached his plea agreement, district courts apply a preponderance of the evidence standard.  *See United States v. Byrd*, 413 F.3d 249, 251 (2d Cir. 2005).  "We review a plea agreement in accordance with principles of contract law and look to what the parties reasonably understood to be the terms of the agreement to determine whether a breach has occurred." *United States v. Sealed Defendant One*, 49 F.4th 690, 696 (2d Cir. 2022) (internal quotation marks and citations omitted); *see also United States v. Vaval*, 404 F.3d 144, 152 (2d Cir. 2005).  Additionally, given that the government enjoys disproportionate bargaining power in plea agreement negotiations, we "construe plea agreements strictly against the government and do not hesitate to scrutinize the government's conduct to ensure that it comports with the highest standard of fairness.'" *United States v. Rivera*, 115 F.4th 141, 146 (2d Cir. 2024) (quoting *United States v. Wilson*, 920 F.3d 155, 162 (2d Cir. 2019)), *cert. denied*, 145 S. Ct. 1455 (2025).

### IV.     DISCUSSION

#### A. The Plea Agreement

The Government contends that Defendant has breached the Plea Agreement (and the fully incorporated APLA) by failing to identify all property that he owns, by refusing to forfeit certain assets that he is required to surrender and liquidate to satisfy his restitution obligations, and by willfully dissipating certain assets that he is required to preserve.  *See generally* Dkt. No. 68.

Courts review interpretations of plea agreements by "look[ing] both to the precise terms of the plea agreements and to the parties' behavior" in order to determine what "the reasonable understanding and expectations of the defendant were as to the sentence for which he had bargained." *Wilson*, 920 F.3d at 163 (internal quotation marks, citation, and brackets omitted). "If a contract is clear, courts must take care not to alter or go beyond the express terms of the agreement, or to impose obligations on the parties that are not mandated by the unambiguous terms of the agreement itself." *Torres v. Walker*, 356 F.3d 238, 245 (2d Cir. 2004) (citation omitted). "Moreover, a party cannot create an ambiguity in an otherwise plain agreement merely by urging different interpretations in the litigation." *Id.* (citation and brackets omitted).

Mindful that plea agreements are to be construed strictly against the Government, the Court concludes that the plain text of the Plea Agreement supports the Government's position that Defendant is obligated to preserve, liquidate, and surrender certain enumerated assets. The Plea Agreement unambiguously states that "[D]efendant agrees to preserve and liquidate assets as outlined in the attached [APLA]." Dkt. No. 43 at ¶ 1(d)(6). Specifically, the APLA states that Defendant agreed to preserve his assets by "agree[ing] not to sell, transfer, borrow against, make withdrawals or transfers from, commit waste against, or otherwise impair the value of any real property, personal property that might reasonably have a value of $1,000.00 or more, bank accounts, investment accounts, stocks, or bonds," in which Defendant has an interest. Dkt. No. 43-1 at ¶ 10. Defendant further agreed to surrender the following assets to satisfy restitution:

> (a) All funds in the following JP Morgan Chase accounts for Fortune 4 Diabetics, as of July 30, 2025[:] (i) Account ending - 7501[,] (ii) Account ending - 7210[,] (iii) Account ending - 2233[,] [and] (iv) Account ending - 7210[;] (b) 2024 Cybertruck Cyberbeast VIN: 7G2CEHEE3RA019877[;] [and] (c) 2017 Mercedez Benz (sic) S550 VIN: WDDUG8FB4HA317196.

*Id.* at ¶ 16.  Additionally, the APLA explicitly states that Defendant agrees to sell the Wood-Ridge Property in accordance with certain conditions enumerated in subparagraphs (a) through (k) of paragraph 17 of the APLA.  *See id.* at ¶ 17.  Furthermore, if the Wood-Ridge Property did not sell within 120 days of the execution of the Plea Agreement, the APLA states that Defendant "underst[ood] that the [Government] may pursue forfeiture, file a foreclosure action, and/or seek the appointment of a receiver to sell the [Wood-Ridge] Property[.]"  *Id.* at ¶ 19.  The terms in the Plea Agreement and incorporated APLA are clear on their face.  Defendant had no reasonable expectation that he could maintain possession of the funds in Fortune 4 Diabetics' bank accounts, or retain ownership of his Cybertruck, Mercedes-Benz, or the Wood-Ridge Property under the terms of the Plea Agreement.  *See, e.g.*, *United States v. Merritt*, 988 F.2d 1298, 1313-14 (2d Cir. 1993) (finding that defendant breached material terms of the plea agreement by refusing to turn over "all personal and corporate financial information requested by the Government").

Moreover, within seven days of the execution of the Plea Agreement, Defendant "agree[d] to provide the [Government] with a complete and accurate list of all residential and/or commercial properties owned by [Defendant] individually and owned by any business in which [Defendant] ha[s] an interest."  Dkt. No. 43-1 at ¶ 5.  Defendant also agreed to submit complete and accurate financial disclosure affidavits and supporting documentation within ten days of a request by the Government.  Dkt. No. 43 at ¶ I(1).  Again, the terms of the Plea Agreement and incorporated APLA are clear and unambiguous—and again, Defendant has not complied with those terms.

Defendant separately contends that he did not breach the Plea Agreement because he complied with the terms of the Agreement that are constitutional.  *See* Dkt. No. 84 at 6-7. Specifically, Defendant asserts, without offering any supporting authority, that requiring him to liquidate and surrender his assets to satisfy restitution without a hearing violates the Takings

12

Clause of the Fifth Amendment because such a taking can only be knowingly and intelligently waived. *See id.* at 7. Defendant contends that at the time he entered into the Plea Agreement, he did not understand that he would have to liquidate and surrender his assets, including his primary residence, his vehicles, and his personal and business bank accounts, to satisfy his restitution obligation. *See id.* at 1-2, 9.

This argument lacks merit. During the Change of Plea Hearing, Defendant affirmed that he had the opportunity to carefully review the Plea Agreement with his attorney, and that he understood the terms he was agreeing to, as outlined in the Agreement. *See* Dkt. No. 76 at 20:04-10. Furthermore, by signing the Plea Agreement, Defendant "acknowledge[d] reading each of the provisions of th[e] [P]lea [A]greement with the assistance of counsel and understand[ing] its provisions." Dkt. No. 43 at ¶ M. Moreover, during the Hearing, the Government specifically identified on the record the assets that Defendant agreed to forfeit for the purpose of satisfying restitution. *See id.* at 21:07-25, 22:01-03 (stating that Defendant "agreed to forfeit . . . the JP Morgan Chase accounts for Fortune 4 Diabetics . . . for the accounts ending in 7501, 7210, 2233, and 7210[,] . . . agreed to turn over . . . the 2024 [C]yber truck . . . as well as the 2017 Mercedes-Benz S550[,] [and] . . . agreed to list [the Wood-Ridge Property]"). Defendant subsequently affirmed that he understood the sentencing possibilities recited by the Government, *see id.* at 22:05-09, and further affirmed that there was no reason why his ability to understand these proceedings was impaired. *Id.* at 6:06-09. Thus, the record indicates that during the Change of Plea Hearing, Defendant "reasonably understood" the Plea Agreement to require him to liquidate and surrender the assets specified in the Agreement.

13

Accordingly, the Court concludes that the Government has established by a preponderance of the evidence a breach of the terms of the Plea Agreement. The Court now turns to determining whether specific performance is an appropriate remedy in this case.

## B. Remedy

"In general, the remedy for a breached plea agreement is either to permit the plea to be withdrawn or to order specific performance of the agreement." *Wilson*, 920 F.3d at 168 (quoting *Vaval*, 404 F.3d at 154); *see also United States v. Cimino*, 381 F.3d 124, 128 (2d Cir. 2004) ("[W]hen a defendant breaches his plea agreement, the Government has the option to either seek specific performance of the agreement or treat it as unenforceable."). "The choice of remedies is generally a discretionary one guided by the circumstances of each case." *United States v. Ramsey*, 503 F. Supp. 2d 554, 559 (N.D.N.Y. 2007) (internal quotation marks omitted) (citing, *inter alia*, *United States v. Brody*, 808 F.2d 944, 948 (2d Cir. 1986) ("The nature of the remedy varies with the nature of the broken promise and the facts of each particular case.")).

In the present case, the Plea Agreement provides a non-exhaustive list of remedies that the Government possesses in the event that Defendant breaches the Agreement. *See* Dkt. No. 43 at ¶ J(2) (noting that the Government "will have the following remedies, *among others*" (emphasis added)). Given Defendant's repeated failure to submit complete and accurate documentation and Defendant's refusal to forfeit certain assets that he is required to surrender under the Plea Agreement, in addition to Defendant's purported attempts to dissipate his assets, the Government requests that this Court order Defendant to specifically perform his obligations under the Plea Agreement. *See* Dkt. No. 68 at 18-19. Under these circumstances, the Court sees no reason to deny the Government's request. The Court cannot discern any adverse impact on public policy or the public's interest that would arise from the Court ordering Defendant to comply with the

provisions of the Plea Agreement into which he voluntarily entered.  *See United States v. Alexander*, 736 F. Supp. 1236, 1242-43 (N.D.N.Y. 1989) (ordering defendant to surrender certain assets to the government in accordance with his plea agreement), *aff'd*, 901 F.2d 272 (2d Cir. 1990).

Accordingly, the Court concludes, in the exercise of its discretion, that the Government is entitled to specific performance of the Plea Agreement.  Specifically, Defendant shall comply with the terms of the Plea Agreement by (i) submitting to the Government a complete and accurate list of all residential and commercial properties that Defendant and his businesses own pursuant to paragraph 5 of APLA; (ii) re-submitting to the Government complete and accurate financial disclosure affidavits for both Defendant and his businesses with supporting documentation pursuant to paragraph 6 of the APLA; (iii) surrendering the 2024 Cybertruck, the 2017 Mercedes-Benz S550, and the balances of the JP Morgan Chase accounts ending in 7501, 7210, 2233, and 7210 as of July 30, 2025, pursuant to paragraph 16 of the APLA; and (iv) marketing the Wood-Ridge Property in accordance with the conditions enumerated in subparagraphs (a) through (k) of paragraph 17 of the APLA.

Lastly, to the extent that Defendant purportedly dissipated over two million dollars of his assets in violation of the Plea Agreement, *see* Dkt. No. 68 at 13, 17-18 (citing Dkt. No. 68-1), the Government is entitled to seek the forfeiture of substitute property.  According to the Plea Agreement, if any of the property described in the forfeiture allegation of the indictment, i.e., a money judgment equal to the value of the proceeds that Defendant derived from the offenses, "(a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property which cannot

be divided without difficulty, the [Government] shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p) and Fed. R. Crim. P. 32.2(e)." *See* Dkt. No. 43 at ¶ 1(e)(2).

Moreover, district courts have the authority to issue restraining orders pursuant to the All Writs Act, 28 U.S.C. § 1651, to secure a defendant's funds in anticipation of restitution. *See United States v. Kelly*, 627 F. Supp. 3d 148, 152 (E.D.N.Y. 2022) (citing *United States v. Catoggio*, 698 F.3d 64, 67 (2d Cir. 2012) (per curiam) (concluding that the All Writs Act permits restraint of a defendant's assets between conviction and sentencing to ensure their availability for anticipated restitution)), *aff'd*, 128 F.4th 387 (2d Cir. 2025). Here, given that Defendant is subject to mandatory restitution pursuant to 18 U.S.C. § 3663A, and there is sufficient reason to believe that a restraining order is necessary to ensure the future availability of Defendants' assets to satisfy restitution, the Court enjoins Defendant from liquidating, transferring, or disposing of the funds contained in the JP Morgan Chase accounts ending in 7501, 7210, 2233, and 7210.

After the Government receives Defendant's completed financial disclosure affidavits, it may submit a further application for relief to the Court, if necessary.

## V.    CONCLUSION

Accordingly, the Court hereby

**ORDERS** that the Government's motion to declare Defendant to be in breach of the Plea Agreement, Dkt. No. 68, is **GRANTED**; and the Court further

**ORDERS** that Defendant must immediately (i) submit to the Government a complete and accurate list of all residential and commercial properties that Defendant owns individually, or that is owned by any business in which Defendant has an interest; (ii) re-submit to the Government complete and accurate financial disclosure affidavits with supporting documentation for

Defendant individually and for each of his businesses; (iii) surrender the 2024 Cybertruck, the 2017 Mercedes-Benz S550, and the balances of the JP Morgan Chase accounts ending in 7501, 7210, 2233, and 7210 as of July 30, 2025; and (iv) market the Wood-Ridge Property in accordance with the conditions enumerated in subparagraphs (a) through (k) of paragraph 17 of the APLA; and the Court further

**ORDERS** that Defendant is enjoined from liquidating, transferring, or disposing of the funds contained in the JP Morgan Chase accounts ending in 7501, 7210, 2233, and 7210; and the Court further

**ORDERS** that Defendant and the Government shall each file and serve an affidavit as to whether Defendant is in full compliance with the terms of the Plea Agreement by **May 1, 2026 at 5:00 PM**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: April 23, 2026
Albany, New York

Anne M. Nardacci
U.S. District Judge